IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMPOUND STOCK EARNINGS SEMINARS, INC., | § § § | |
| Plaintiff-counterdefendant, | § § | |
| VS. | § § § | Civil Action No. 3:10-CV-2201-D |
| MARK DANNENBERG, | § § § | |
| Defendant-counterplaintiff. | § § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to dismiss a copyright infringement counterclaim under Fed. R. Civ. P. 12(b)(6) presents the question whether a party who did not at least plead that he satisfied the application approach for registering the copyrights at issue has stated a claim for copyright infringement as an author and beneficial owner based on another's allegedly fraudulent registration of the copyrights. Concluding that he has not, the court grants the motion and dismisses the counterclaim without prejudice to its being reasserted in an amended counterclaim that the counterplaintiff obtains leave to file after complying with the application approach.

I

Plaintiff-counterdefendant Compound Stock Earnings Seminars, Inc. ("CSES")[1] brings this action against defendant-counterplaintiff Mark Dannenberg ("Dannenberg") for copyright infringement and related claims.  Dannenberg counterclaims for copyright infringement and related claims.[2]

Dannenberg teaches investment seminars.[3]  At some point in 2006, he entered into negotiations to teach investment seminars for CSES.  Although the parties did not execute a formal agreement, Dannenberg taught the seminars for CSES, who paid Dannenberg for

_____

[1]CSES filed the motion as "COMPOUND STOCK EARNINGS SEMINARS, LTD. successor in interest to COMPOUND STOCK EARNINGS SEMINARS, INC."  P. Mot. 1. In an amended complaint filed on March 16, 2011, CSES identified itself by the name COMPOUND STOCK EARNINGS SEMINARS, LTD. SUCCESSOR IN INTEREST TO COMPOUND STOCK EARNINGS SEMINARS, INC. successor in interest to COMPOUND STOCK EARNINGS SEMINARS, INC."  Because the caption of the case has not been amended by order, however, the court will refer to CSES by the name used in the complaint.

[2]CSES sues Dannenberg for copyright infringement, breach of contract, tortious interference with contract, tortious interference with prospective relations, breach of covenant not to compete, breach of fiduciary duty, and declaratory judgment.  Dannenberg counterclaims for declaratory judgment, copyright infringement, tortious interference with business opportunity, and breach of contract.

[3]In deciding CSES's motion, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  Because the claim at issue is a counterclaim, the court treats Dannenberg as the plaintiff for the purposes of deciding CSES's motion and construes the facts in the light most favorable to Dannenberg as the nonmovant.  *See, e.g.*, *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1047, 1050 (5th Cir. 1982) (applying rule to construe facts in favor of counterplaintiff where Rule 12(b)(6) motion was addressed to counterclaim).

his services.  In 2008 Dannenberg proposed to teach in the seminars a new investment methodology called "Credit Spreads."  After several months of discussions, the parties agreed to include this topic in his presentations.  Dannenberg cowrote the "Credit Spread Seminar Manual" with a person who is not involved in this lawsuit.  Dannenberg later wrote another manual—the "Compound Stock Earnings Weekly Credit Spread Manual"—for use in the seminars.

In 2010—without compensating Dannenberg—CSES began teaching the "Credit Spreads" methodology and selling a service called "Credit Spreads Platinum Service."  As a part of this effort, CSES sold copies of the two manuals (the "Manuals") without compensating Dannenberg or obtaining his permission.  Dannenberg demanded that CSES either pay him to teach the methodology or compensate him for the rights to use the Manuals.  CSES then terminated its relationship with Dannenberg.  It asserted that it owned the copyrights to the Manuals, and it directed Dannenberg to cease representing ownership in the copyrights and to return all materials to CSES.  This litigation followed, with CSES asserting claims against Dannenberg and Dannenberg alleging counterclaims against CSES.

CSES moves under Rule 12(b)(6)[4] to dismiss Dannenberg's copyright infringement

---

[4]Dannenberg maintains that CSES's motion must be treated as a motion for summary judgment because CSES relies on matters outside the pleadings to support its assertion that Dannenberg failed to apply for copyright registration.  *See* D. Br. 1, 3.

A court generally cannot look beyond the pleadings to decide a Rule 12(b)(6) motion.  *See, e.g., McCartney v. First City Bank,* 970 F.2d 45, 46 (5th Cir. 1992).  If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Rule 12(d).  The court declines to convert the motion to dismiss to a motion for summary judgment, however, and opts not to consider

counterclaim, contending that he has failed to allege that he preregistered or registered the copyright under 17 U.S.C. § 411(a) and is therefore barred from asserting a claim for copyright infringement, and that he has failed to plead preregistration or registration of the copyright claim, as § 411(a) requires.  Dannenberg alleges in his counterclaim that CSES "invalidly and illegally appl[ied] for and obtain[ed] copyrights to the [Manuals] in its own name."  Countercl. ¶ 27(c).  He therefore acknowledges that CSES applied to register copyrights for the Manuals, but he asserts that CSES was not the owner of the copyrights to the Manuals and that it had no right to register copyright ownership of them.  Dannenberg alleges that CSES violated his copyrights in the Manuals by selling them without his permission, asserting ownership, and invalidly obtaining copyright registration in its own name.  He opposes CSES's motion to dismiss on two principal grounds: first, that copyright registration is no longer a jurisdictional requirement, and, second, that he has standing to pursue a copyright infringement action as an author and beneficial owner of copyrights that CSES wrongfully registered in its own name.[5]

---

matters outside the pleadings.  *See, e.g., Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 415 (5th Cir. 1980) (acknowledging district court's discretion to decide whether to accept material beyond the pleadings, and specifically contemplating that court can reject extra-pleading material if it is "scanty, incomplete, or inconclusive").  Because it is clear from the pleadings alone that Dannenberg does not allege that he has applied for copyright registration for the materials at issue, and that he asserts instead that CSES wrongfully obtained copyrights in the materials at issue in its own name, the court need not consider matters outside the pleadings in deciding CSES's motion.

[5]Although a reply brief is permitted under N.D. Tex. Civ. R. 7.1(f), CSES did not file one.  The motion to dismiss therefore became ripe with the filing of Dannenberg's response.

II

The court turns first to Dannenberg's contention that copyright registration is no longer a jurisdictional requirement.

A

Section 411(a) provides, in pertinent part, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  CSES moves to dismiss Dannenberg's copyright infringement counterclaim on the grounds that he has failed to allege that he preregistered or registered the copyright under § 411(a) and to plead preregistration or registration of the copyright claim.  In opposition, Dannenberg contends that, under the Supreme Court's decision in *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S.Ct. 1237 (2010), copyright registration is no longer a jurisdictional requirement but is instead a claim-processing rule.  He posits that the Court in *Reed Elsevier* "'declin[ed] to address' whether *or not* section 411(a) is 'a mandatory precondition to suit.'"  D. Br. at 7 (brackets and emphasis in original).[6]

Dannenberg maintains that, "[a]lthough [§ 411(a)] still applies in copyright infringement cases, [*Reed Elsevier*] dictates that this Court carefully consider the actual

---

[6]In quoting *Reed Elsevier*, Dannenberg's brief concludes with the word "suit."  But as is clear from the court's discussion below, there is important language in the full quotation that Dannenberg has omitted, i.e., "a mandatory precondition to suit that . . . *district courts may or should enforce sua sponte* by dismissing copyright infringement claims involving unregistered works."  *Reed Elsevier*, 130 S.Ct. at 1249 (some emphasis added).

purpose of § 411(a)[.]" *Id.* at 1-2; *see also id.* at 7 ("Given that alleged noncompliance with §411(a) is no longer a jurisdictional bar to suit or standing, it is incumbent upon this Court to assess the actual purpose of §411(a)'s registration requirement in deciding this motion."). He posits that the court should be particularly careful not to dismiss his copyright infringement counterclaim based on a line of cases that held "that they [were] constrained to dismiss, without prejudice, with leave to amend, due to a *lack* of subject matter jurisdiction." *Id.* at 8 (emphasis in original). Dannenberg concludes that although § 411(a) may remain as a precondition to suit, in view of *Reed Elsevier*'s rejection of § 411(a) as a restriction on this court's subject matter jurisdiction, the key issue presented by CSES's motion "is whether the *purpose* of §411(a) is satisfied under cases actually deciding *that issue*. Decisions prior to *Reed Elsevier* that dogmatically dismissed infringement actions based upon the prior law have been abrogated and cannot be the basis of dismissal of Defendant's claims." *Id.* at 9 (emphasis in original).

## B

Because CSES does not challenge the court's subject matter jurisdiction,[7] Dannenberg's argument appears to be intended as a predicate for the premises that the court must consider the purpose of § 411(a) in deciding CSES's motion and that CSES is relying on a line of cases that is now questionable and should not be relied on to dismiss

---

[7]CSES does not state that it is challenging the court's subject matter jurisdiction over Dannenberg's copyright infringement counterclaim, and its motion is filed under Rule 12(b)(6), not Rule 12(b)(1).

Dannenberg's copyright infringement counterclaim. This argument is not sufficient of itself, however, to warrant denying CSES's motion.

In *Reed Elsevier* the Supreme Court "decline[d] to address whether § 411(a)'s registration requirement is a mandatory precondition to suit that . . . *district courts may or should enforce sua sponte* by dismissing copyright infringement claims involving unregistered works." *Reed Elsevier*, 130 S.Ct. at 1249 (some emphasis added). The Court did not address—or decline to address—whether § 411(a) requires registration before a party can bring a copyright infringement action or whether such a claim can or must be dismissed on the merits (rather than on jurisdictional grounds) when lack of registration is raised by a party's motion. Because *Reed Elsevier* did not alter the conclusion that § 411(a) imposes a mandatory precondition to bringing a copyright infringement claim, it does not call into question the validity of cases that interpret § 411(a) to prescribe such a requirement on non-jurisdictional grounds.

III

The court now considers Dannenberg's second ground for opposing CSES's motion: that he has standing to pursue a copyright infringement action as an author and beneficial owner of copyrights that CSES wrongfully registered in its own name.

A

Dannenberg begins his argument by addressing what he considers to be the importance of the purpose of the registration requirement: "that federal courts only entertain litigation over works that are putatively or actually copyrightable." D. Br. 9. He contends

that this purpose is satisfied where the works have already been accepted by the Copyright Office, or, under the Fifth Circuit standard, where the Copyright Office has merely received the application, deposit, and fee.  Dannenberg maintains that regarding the Manuals, "not only have the application, deposit and fee been received by the Copyright Office . . .[,] the Copyright Office has actually 'passed on the copyrightability of the material at issue' — by issuing registration certificates for both manuals." *Id.* at 10.  He distinguishes two cases that CSES cites in its brief on the basis that both involved complaints that were dismissed based on a failure to allege that the copyrights at issue were registered.  Dannenberg maintains that such cases are inapposite because he "claims he is the legal and beneficial owner of the registered copyrights of works he authored, which were obtained fraudulently by Plaintiff in Plaintiff's name." *Id.*  He reasons that, under the Fifth Circuit standard, if the law were as CSES argues, he could defeat CSES's motion to dismiss merely by filing with the Copyright Office a registration application for the Manuals, which he characterizes as "a complete and utter waste of the time of the Copyright Office, which has already passed on the cop[]yrightability issue and found both manuals to be copyrightable material." *Id.*

Citing and quoting 17 U.S.C. § 501(b), Dannenberg next contends that he has standing to sue for copyright infringement as a beneficial owner.  He maintains that cases that construe "beneficial ownership" standing under § 501(b) "are consistent with and amplify the stated purpose of the §411(a) registration requirement," *id.* at 11; beneficial ownership under § 501(b) does not require that the owner be a part of the copyright's legal chain of title; he claims to be a beneficial owner and makes his claim through CSES, the copyrights'

- 8 -

purported owner; although he has not located a case like this one that involves a claim for infringement of a wrongfully obtained copyright, analogous cases construing §§ 411(a) and 501(b) demonstrate that CSES's motion is not well-founded; although his name does not appear in the "legal chain of title" to the copyrights of the Manuals, this is not required, and his pleadings clearly allege that, as the creator and author of the Manuals, he is the legal and beneficial owner of the copyrights, *id*. at 13; and his claim is much stronger than that of a purported assignee of a copyright interest because he essentially claims that the Manuals were stolen from him when CSES fraudulently misrepresented to the Copyright Office that the Manuals were works made for hire and obtained illegal certificates in its own name. Dannenberg concludes that if "[he] does not have standing to pursue an infringement claim on a wrongfully registered copyright he claims was obtained by fraud, it is difficult to imagine who would have such standing." *Id.* at 14.

B

There are decisions of the Fifth Circuit that can be read to support the conclusion that a party suing for copyright infringement must apply for registration rather than rely on another's registration. *See, e.g.*, *Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 Fed. Appx. 344, 348 (5th Cir. 2011) (per curiam) ("If a plaintiff does not have a copyright registration, her claim may be dismissed for failure to state a claim but should not be dismissed for lack of subject matter jurisdiction."), and *id.* ("Because the registration requirements of 17 U.S.C. § 411(a) were not met as to the software at issue in this case, REI failed to state a claim for copyright infringement. Dismissal of REI's copyright infringement

claims was proper."); *Starr v. DaimlerChrysler Corp.*, 252 Fed. Appx. 590, 590 (5th Cir. 2007) (per curiam) ("This court does not require that a certificate from the Copyright Office be obtained before bringing suit, but it does require the plaintiff to have filed an application for registration with the Copyright Office prior to the infringement action."); *Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387, 392 (5th Cir. 2000) ("To maintain a copyright infringement claim, the owner of the copyright must have registered it."); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (per curiam) ("[B]efore proceeding to court, a plaintiff must register each copyright that he seeks to enforce."); *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991) ("[A] plaintiff has complied with the statutory formalities when the Copyright Office receives the plaintiff's application for registration, fee and deposit" (citing *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984))).  In *Lakedreams*, for example, the defendant had obtained a certificate of registration while the plaintiff had only applied for registration without receiving a certificate, but the court analyzed the sufficiency of the plaintiff's pending application rather than relying on the defendant's completed registration to determine that the requirements of § 411(a) had been met.

But because the court has located no Fifth Circuit decision that expressly addresses the specific circumstances of this case, the court will assume *arguendo* that there is no binding precedent that dictates the outcome here.  Instead, construing § 411(a) in tandem with 17 U.S.C. §§ 408(a) and 501(b), the court holds that the party asserting a copyright

infringement claim must have applied for registration, and the Copyright Office must have

received the application, deposit, and fee.

With exceptions not pertinent here, § 411(a) provides that

> no civil action for infringement of the copyright in any United
> States work shall be instituted until preregistration or
> registration of the copyright claim has been made in accordance
> with this title.   In any case, however, where the deposit,
> application, and fee required for registration have been
> delivered to the Copyright Office in proper form and
> registration has been refused, the applicant is entitled to institute
> a civil action for infringement if notice thereof, with a copy of
> the complaint, is served on the Register of Copyrights.   The
> Register may, at his or her option, become a party to the action
> with respect to the issue of registrability of the copyright claim
> by entering an appearance within sixty days after such service,
> but the Register's failure to become a party shall not deprive the
> court of jurisdiction to determine that issue.

*Id.*  Accordingly, under § 411(a), "no civil action for infringement of the copyright in any

United States work shall be instituted until preregistration or registration of the copyright

claim has been made *in accordance with this title*."  *Id.* (emphasis added).  Under § 408(a),

only the "owner of [a] copyright or of any exclusive right in the work may obtain

registration."   Under § 501(b), "[t]he legal or beneficial owner of an exclusive right under

a copyright is entitled, *subject to the requirements of section 411*, to institute an action for

any infringement of that particular right committed while he or she is the owner of it."  *Id.*

(emphasis added).  Together, these statutory provisions establish a scheme whereby only the

legal or beneficial owner of an exclusive right under a copyright can register and sue, subject

to § 411(a), which requires preregistration or registration of the copyright claim registration

to precede suit.  If the court relied on Dannenberg's interpretation of § 411(a), a copyright owner, rather than registering his own ownership claim, could rely on the false registration of a third party who was not even an owner or beneficial owner to bring a suit based on an ownership right not described in the false registration (i.e., the right of the *plaintiff* to the copyright of the work, rather than the right asserted by the *third party*).

Contrary to Dannenberg's position, an interpretation of § 411(a) that requires him to apply for registration before filing suit does not allow false claimants who registered first to become immune from suit; this is so because nothing prohibits an owner from also applying for registration and independently fulfilling the requirements of § 411(a), even if another has already obtained registration for the same work.  In fact, 37 C.F.R. § 202.3(b)(11)(iii) (2011) specifically contemplates that an applicant might desire to contest the validity of an earlier registration.  *See id.* ("Where an applicant for registration alleges that an earlier registration for the same version is unauthorized and legally invalid, a registration may be made by that applicant[.]").  Even if the Copyright Office were to reject Dannenberg's application, he would then be eligible to sue for infringement under § 411(a), which permits rejected applicants to sue, provided the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form.

Dannenberg's argument that his position is supported by the purpose of the registration requirement of § 411(a)—i.e., to ensure that federal courts only entertain copyright litigation after the Copyright Office has "passed on the copyrightability of the

- 12 -

material at issue," D. Br. 10—also lacks force.  As Dannenberg recognizes, the Fifth Circuit follows the "application approach" to comply with § 411(a).  *See, e.g., Apple Barrel*, 730 F.2d at 386-87; 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][3][b] (2011).[8]  Under this approach, to comply with the registration requirement of § 411(a), one need only prove that he has paid the required fee, deposited the work in question, and that the Copyright Office has received the registration application.  *See, e.g., Starr*, 252 Fed. Appx. at 590 (citing *Lakedreams*, 932 F.2d at 1108); *see also Apple Barrel*, 730 F.2d at 386-87 ("In order to bring suit for copyright infringement . . . [o]ne need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application.").  Therefore, in this circuit a party can bring a claim for copyright infringement *before* the Copyright Office has even considered the application and determined whether the material is copyrightable.

---

[8]Other circuits follow the "registration approach," which requires a party to have actually registered or received its denial from the Copyright Office before it files a civil action.  *See, e.g., La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1202 (10th Cir. 2005) (discussing "application approach" and "registration approach").

\*   \*   \*

Because Dannenberg has failed to plead as to the Manuals in question that he has at least met the registration requirements of § 411(a) under the application approach, the court grants CSES's motion to dismiss Dannenberg's copyright infringement counterclaim.  This dismissal is without prejudice to his reasserting this claim in an amended counterclaim that he obtains leave to file after complying with the application approach.

**SO ORDERED**.

January 4, 2012.



SIDNEY A. FITZWATER
CHIEF JUDGE